IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIMINAL NO. 21-00653 JB |
| ) | |
| vs. ) | |
| ) | |
| JOSHUA RICO, a.k.a. "joshrico2196," ) | |
| "chrislujan2," "clujan0420," ) | |
| "erikromero1123," ) | |
| ) | |
| Defendant. ) | |

## UNITED STATES' MOTION FOR DETENTION

The United States respectfully moves this Court to detain Defendant Joshua Rico ("Defendant") pending trial as a danger to the community. In the event the Court is inclined to consider Defendant's release, the United States requests the Court place Defendant in the third-party custody of La Pasada Halfway House and impose conditions of release that, at a minimum, prohibit Defendant's presence in San Miguel County in order to ensure the safety of minors in the community. As this motion demonstrates, however, Defendant presents an unmitigated risk of danger to the community and should be remain detained pending trial.

## PROCEDURAL STATEMENT

1. A federal grand jury in the District of New Mexico returned an indictment on May 12, 2021, charging Defendant with five counts of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). Doc. 2.

2. Defendant appeared for an initial appearance before this Court on May 17, 2021 and is presently scheduled for both an arraignment and detention hearing on May 19, 2021. Docs. 6, 8.

1

## FACTUAL STATEMENT

3.     Beginning as early as January 2018, Defendant began using a series of fictitious Snapchat profiles to coerce minor females in his community into sending him sexually explicit material and participate in sexual acts, threatening to expose the victims' nude images and videos if they did not meet his demands. In perpetrating this sextortion[1] scheme, Defendant appeared to target female high school students he was familiar with by virtue of his employment as the assistant basketball coach at a local high school.

4.     Defendant used his own Snapchat account and accounts purportedly belonging to "Chris Lujan" and "Erik Romero"—both fictitious creations of Defendant—to threaten, coerce, and manipulate at least four minors[2] in order to obtain sexually explicit material and sexual favors. The following summary of the conduct charged in the indictment reveals a disturbing pattern of coercive sexual exploitation against minors:

a.     Count 1: From approximately May 9, 2016, to approximately July 27, 2018, Defendant engaged in text messages with Jane Doe 1 when she was 14 to 16 years old. The text messages, obtained from both Jane Doe 1 and Defendant's cellular phones, included thousands of sexually charged messages. Throughout the timeframe charged in Count 1, Defendant sent Jane Doe 1 numerous images and videos of his genitals and regularly requested

---

[1] "Sextortion" is the colloquial term referring to a form of sexual exploitation where the perpetrator extorts sexual favors or explicit material from the victim, often a minor, by threatening to expose private or sensitive material.

[2] The evidence points to the presence of additional minors victimized in this same manner by Defendant, which are not presently included in the indictment while the investigation remains ongoing.

that Jane Doe 1 engage in sexual acts with him.

        b.      <u>Count 2</u>: Beginning on approximately April 25, 2018, and continuing to approximately August 23, 2019, Defendant "friended" Jane Doe 1 on Snapchat as "Chris Lujan" without advising her of his true identity. During this charged timeframe, Jane Doe 1 was 16 to 17 years old. Using his prior relationship with Jane Doe 1, "Chris" exploited sexual favors and demanded sexually explicit material from Jane Doe 1. The threats from "Chris" escalated over time, causing Jane Doe 1 significant distress. For instance, in order to avoid having her images disseminated, "Chris" demanded that Jane Doe 1 perform oral sex on someone and send a video as proof. Conveniently, by his own design, Defendant was simultaneously communicating with Jane Doe 1 using his genuine Snapchat profile, and offered to "help" her deal with the extortion by "Chris." Unsurprisingly, Defendant agreed to assist Jane Doe 1 by "allowing" her to perform oral sex on him and film the encounter for "Chris." A video corroborating Defendant's exploitation of Jane Doe 1 was located on both Jane Doe 1's and Defendant's cellular devices. Further, law enforcement located a Snapchat message from "Chris" describing what he wanted Jane Doe 1 to do in a future video, further corroborating her statement.

        c.      <u>Count 3</u>: From approximately February 1, 2019, to approximately January 23, 2020, Defendant communicated with Jane Doe 2 on Snapchat both as "Chris Lujan" and "Erik Romero," when she was 13 to 14 years old. Jane Doe 2 reported that she previously agreed to send nude photos to "Chris Lujan" on Snapchat. She further reported that "Erik" somehow obtained these photos and began threatening to expose the images if she did not send him nude images and masturbation videos. In January 2020, "Erik" directed Jane Doe 2 to add Defendant as a Snapchat friend and send him nude images and videos as well. Both "Erik" and Defendant

sent Jane Doe 2 images of their genitals, which ultimately caused Jane Doe 2 to suspect they were the same person due to similarity in the image backgrounds. Around the same time, "Erik" gave Jane Doe 2 an "ultimatum," requiring that she perform oral sex on Defendant in order to avoid distribution of her nude images, which she declined.

        d.      <u>Count 4</u>: From approximately September 1, 2019, to approximately December 16, 2019, Defendant communicated with Jane Doe 3 on Snapchat both as Defendant and as "Chris Lujan" when she was 16 years old. In September 2019, "Chris" sent Jane Doe 3 a message on Snapchat with the following threat: "You're not gonna do it ? Then I just might post nudes that I have all over social media and say they are you. I'm not kidding watch I'll do it now and I know a lot of people you know." Jane Doe 3 replied, "Because I won't send you a picture[?]," and Defendant confirmed, "Because you're not giving me what I want but I'll take them down if you do[.]" Jane Doe 3 blocked "Chris" on Snapchat, only to receive the following message from "Erik Romero": "Since you blocked me. It's Chris Lujan." Separately, Jane Doe 3 reported that she received a friend request from Defendant shortly before December 2019. Defendant would send Jane Doe 4 images and videos of his penis and ask for photos and videos in return, requests to which she complied.

        e.      <u>Count 5</u>: From approximately August 9, 2018, to approximately December 19, 2018, Defendant communicated with Jane Doe 4 as "Chris Lujan" on Snapchat when she was 16 years old. Jane Doe 4 reported receiving a friend request from an individual named "Chris," who began sending her images of his penis. "Chris" then repeatedly asked for nude images and videos, threatening to hurt her family if she refused. "Chris" told Jane Doe 4 he knew where she lived and correctly identified her town of residence, causing Jane Doe 4 to send the requested

material rather than risk her safety or the safety of her family. "Chris" ultimately proposed a "deal" where he would meet Jane Doe 4 for oral sex so that she did not have to continue making videos for him. Jane Doe 4 rejected this offer.

5. Defendant's sextortion scheme continued unchecked for nearly three years, until one of the victims began to piece together that Defendant and "Erik" were the same person, and subsequently reported the conduct to the New Mexico State Police. Through diligent investigation, including the review of voluminous records obtained by Snapchat, law enforcement was able to confirm through forensic evidence that Defendant was, in fact, also "Chris Lujan" and "Erik Romero." More specifically, cross-referencing the Internet Protocol ("IP") address logs obtained by Snapchat reveals <u>numerous</u> instances where the accounts were connecting to the same IP address, including instances where <u>all four</u> accounts were connected to the same IP address, providing evidence that the accounts were being accessed by the same device. Further, through geolocation data provided by Snapchat, law enforcement determined that not only were these accounts connecting to the same IP address, but there were numerous instances where the accounts were geolocating in the immediate vicinity of Defendant's Pecos residence. In addition to this incriminating evidence from Snapchat, Defendant's devices also contained user account information for at least two of the fictitious accounts.

6. The state initially charged Defendant in a state criminal complaint, but later dismissed the complaint pending further investigation. Following dismissal of the state case, victims reported that Defendant would wave to them while out and about in the Pecos community. Needless to say, this unwanted contact, particularly on the heels of state criminal charges, was very alarming for the minor victims and their families.

**ARGUMENT**

**I.      The law presumes detention is appropriate for the charged offenses, and consideration of the factors outlined in 18 U.S.C. § 3142(g) favors detention.**

Congress has set forth a rebuttable presumption that detention is the only way to adequately protect the community from individuals charged under 18 U.S.C. § 2422. 18 U.S.C. § 3142(e)(3)(E). Section 3142(e)(3) details a statutory presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." For pretrial detention, the lack of reasonable assurance of either the defendant's appearance or the safety of others in the community is sufficient; both are not required. "Once the presumption is invoked, the burden of production shifts to the defendant." *United States v. Holguin*, 791 F.Supp.2d 1082, 1087 (D.N.M. 2011) (quoting *United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991)).

In order to rebut the presumption favoring detention, Defendant must "introduce some evidence contrary to the presumed fact." *United States v. Gilkeson*, 431 F. Supp. 2d 270, 295 (N.D.N.Y. 2006) (citing *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)). Were a defendant able to satisfy his burden of production, the United States would bear the burden of persuasion, by clear and convincing evidence, that he presents a danger to the community or, by a preponderance of evidence, that he presents a risk of flight. *Id.* Even if a defendant meets his burden, "the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Stricklin*, 932 F.2d at 1355.

To determine whether the presumptions of dangerousness and flight are rebutted by Defendant, the Court must consider the factors set forth in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the crime charged;

>  (2) the weight of the evidence against the defendant;
>
>  (3) the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct;
>
>  (4) the nature and seriousness of the danger to the community or to an individual that would be posed by release.

Even if Defendant were able to meet his burden of production, the presumption favoring detention would not disappear. *Stricklin*, 932 F.2d at 1355; *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Instead, the presumptions of dangerousness and flight would remain factors to be weighed by the Court in reaching its pretrial-detention ruling. The evidence in this case demonstrates that Defendant should be detained as a danger to the community, based on the factors outlined in 18 U.S.C. § 3142(g).

    A.    <u>The Nature and Circumstances of the Offense Charged</u>

Child exploitation offenses, particularly offenses that include the creation of sexually explicit material depicting a minor, are insidious and the harm they represent is exponential. As a judge in this district has noted, "Congress stressed that the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'" *United States v. Crisman*, 2011 WL 5822731, at *16 (D.N.M. Nov. 15, 2011) (quoting Child Pornography Prevention Act of 1996, Pub.L. No. 104–208, § 121, 110 Stat. at 3009–27).

Defendant's egregious conduct will certainly impact the victims for years to come. In addition to the threats and coerced sexual acts, there is another layer of victimization because Defendant obtained, non-consensually, sexual images and videos of the minors. These victims must not only contend with the exploitation by Defendant, but also with the added victimization

resulting from knowledge that these images and videos exist and may be circulating.

Although the most recent conduct outlined in the indictment occurred over one year ago, the nature and circumstances of the offenses still favor detention. Defendant's sextortion scheme exhibited orchestrated manipulation and relied on numerous social media accounts—each generating its own set of sizeable data. In addition, law enforcement had to comb through a large amount of data obtained from the extraction of not only Defendant's devices, but also those belonging to the victims. The full forensic examination and analysis took the better part of a year, necessarily delaying charging.

Despite the passage of time, the United States remains concerned that Defendant poses a risk to both the victims and minors in the community. This concern stems from three primary considerations: 1) recognition that the charged conduct lasted over a three-year timeframe; 2) the fact that Defendant's coercive conduct escalated and became more brazen over time; and 3) Defendant's apparent efforts ingratiate himself with some of the victims by waving at them following dismissal of the state charges pending further investigation.

    B.    <u>The Weight of the Evidence Against Defendant</u>

The weight of the evidence against Defendant is overwhelming. There is substantial, seemingly incontrovertible evidence that Defendant is guilty of coercion and enticement of at least four minor victims. The evidence in this case is derived from three primary sources, each pointing to Defendant's guilt. First, the four charged victims, as well as uncharged victims, report remarkably similar conduct by Defendant. Second, the forensic evidence obtained from the records provided by Snapchat—including IP logs and geolocation information—corroborate the victims' statements. Third, the evidence obtained from the cellular device extractions,

including devices belonging to both Defendant and the victims, close the loop on Defendant's conduct. Although Defendant attempted to create a digital web to conceal his activities, the combined evidence from these three sources clearly exposes Defendant's scheme. Accordingly, the weight of the evidence favors detention.

    C.    <u>The History and Characteristics of Defendant</u>

While the United States is presently unaware of any prior criminal history, Defendant's conduct reveals a lengthy effort to exploit minors in his community in order to gain sexually explicit material and sexual favors. Defendant's position at the school provided him with knowledge of and access to the minor victims—trust afforded him that he abused to perpetrate his scheme. It is extremely concerning that Defendant was able to conceal the exploitation of numerous victims for upwards of three years, based on the evidence presently known to law enforcement. The fact that the first victim did not come forward until January 2020 evinces the fear Defendant instilled in the victims, causing them to attempt to address the extortion on their own rather than seek assistance from law enforcement. The risk posed by Defendant simply cannot be fully mitigated through conditions of release. *See United States v. Davin*, 2012 WL 2359419, *3 (even where family members assure the court that all computers, internet access and smartphones are removed from the home, the court finds "little comfort" because the defendant successfully concealed his behavior from his family). As such, Defendant's history and characteristics weigh in favor of detention.

    D.    <u>The Nature and Seriousness of Danger to Any Person or the Community that Would Be Posed by the Person's Release</u>

The evidence clearly demonstrates Defendant poses a risk of harm to minors in the community. The charged offenses, by their very nature, indicate Defendant took efforts to

conceal his identity. Further, through his actions following dismissal of the state case, Defendant has demonstrated that his release would place the victims in fear of additional contact by Defendant. In addition to the risk of danger to the community, it is worth noting that Defendant's risk of flight cannot be entirely discounted, particularly when the presumption for detention is invoked. While Defendant apparently made no attempt to flee during or following his state prosecution, his outlook has charged now that he is facing the prospect of a federal prosecution with a statutory mandatory minimum sentence of 10 years' incarceration. On the whole, as with all the prior detention factors, this factor supports Defendant's detention.

> II. **In the event the Court does not order Defendant's detention, the United States requests third-party custody outside San Miguel County, under strict conditions of release.**

Pursuant to the Adam Walsh Act, a release order for offenses involving a minor victim under 18 U.S.C. § 2422 must include certain enumerated conditions of release. 18 U.S.C. § 3142(c)(1)(B). More specifically, a release order must include, at a minimum, the following conditions, requiring a defendant to:

(iv)   abide by specified restrictions on personal associations, place of abode, or travel;

(v)   avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi)   report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii)   comply with a specified curfew; and

(viii)   refrain from possessing a firearm, destructive device, or other dangerous weapon.

*Id.* (preserving subsection numbering). In addition to imposition of these conditions, the Act also requires the Court impose electronic monitoring as a condition of release. According to the Act itself, these mandatory conditions are necessary to "protect children from sexual exploitation and violent crime." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (codified throughout United States Code Title 42); *see also* § 501, 120 Stat. at 624 ("The government has a compelling State interest in protecting children from those who sexually exploit them…").

In the event the Court is inclined to disagree with the United States and impose conditions of release, the United States requests that the Court place Defendant in the third-party custody of La Pasada Halfway House, and expressly objects to any request for placement with a family member. With respect to conditions of release, the United States submits there is a compelling interest in imposition of the following specific conditions:

1. Travel restricted to Bernalillo County, with express prohibition against travel to San Miguel County;

2. Curfew or "home detention" in connection with mandatory location monitoring;

3. No contact with the alleged victims, uncharged victims, minor witnesses, and their families;

4. No unsupervised contact with minors; and

5. No possession or use of Internet-capable devices unless monitored by the United States Probation Office's Computer Restriction and Monitoring Program.

Finally, the United States requests the Court advise Defendant that these conditions are imposed with "no tolerance" for violations—such that any infraction would result in detention pending trial.

## CONCLUSION

The United States requests that the Court detain Defendant as a danger to the community in light of the charged offenses. In the event the Court declines to enter a detention order, the United States requests the Court place Defendant in the third-party custody of the halfway house, with the conditions of release requested herein.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

*<u>Electronically filed on May 17, 2021</u>*
SARAH J. MEASE
JAYMIE L. ROYBAL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 346-7274

I HEREBY CERTIFY that on the foregoing pleading was electronically filed, which caused counsel of record to be served by electronic means.

  */s/*
SARAH J. MEASE
Assistant United States Attorney